UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ALLEN K. SMITH,<br><br>      Plaintiff,<br><br>vs.<br><br>CREDIT PROS INTERNATIONAL, LLC,<br><br>      Defendants | Civil Action No. 2:23-cv-11582-LVP-APP<br><br>Hon. Linda V. Parker |

**CREDIT PROS INTERNATIONAL, LLC'S MOTION FOR PARTIAL DISMISSAL OF FIRST AMENDED COMPLAINT[1]**

Credit Pros International, LLC ("Credit Pros"), by and though its undersigned counsel, files this Partial Motion to Dismiss First Amended Complaint ("Motion") pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). As more fully set forth in the accompanying Memorandum of Points and Authorities, the Court should dismiss the fraud-based claims set forth in the First Amended Complaint ("FAC") (Dkt. No.

---

[1] Pursuant to Fed. R. Civ. P. 12(a)(4), Credit Pros has not yet responded to Count I(b)-(c) of the FAC. *See, e.g., Vendetti v. Compass Env.'l, Inc.*, No. 06 CV 3556, 2006 WL 8199711, at *3 (N.D. Ill. Oct. 25, 2006) ("a defendant's filing of a partial motion to dismiss automatically extends its time to answer the unchallenged counts, as if it had moved to dismiss all counts"); *Aslani v. Sparrow Health Systems*, No. 1:08-cv-298, 2009 WL 736654, at *4 (W.D. Mich. March 12, 2009) ("Almost every court to consider this latter issue has concluded that '[p]ursuant to Rule 12(a)(4) of the Rules of Civil Procedure, once a motion to dismiss under Rule 12(b)(6) is filed a defendant need not file its answer until 10 days following the denial of the motion to dismiss.") (internal quotation and citation omitted); *Dunbar v. Prelesnik,* No. 16-1374, 2016 WL 11618615 (6th Cir. 2016) ("filing a motion to dismiss tolls the deadline for a defendant to file an answer to a complaint by operation of Rule 12(a)(4)(A)"); *Jones v. Wolf*, No. 14-12107, 2020 WL 7493105, at *3-4 (E.D. Mich. Dec. 21, 2020) (because "the court did not deny Defendant's motion to dismiss…Defendant's obligations under Rule 12(a)(4) were never triggered")

55232476.1

14)—specifically, those claims predicated upon a violation of the Credit Repair Organizations Act, § 1679b(a)(3)-(4) (Count I(a)) and the Michigan Credit Services Protection Act, M.C.L. § 455.1823(d)-(e) (Count II(a))—for failure to plead allegations of fraud with particularity as required by Fed. R. Civ. P. 9(b).

Credit Pros' counsel has complied with E.D. Mich. L.R. 7.1(a)(2)(A), and concurrence in the relief requested by this motion has not been obtained. Specifically, Credit Pros' counsel made contact with Marwan Daher on November 21, 2023, and concurrence was requested but was not obtained.

WHEREFORE, for the reasons set forth herein and in the accompanying Memorandum of Points and Authorities, Credit Pros respectfully requests that this Court dismiss the FAC's claims and allegations predicated upon fraud for lack of particularity.

Respectfully submitted,

Dated: November 21, 2023

By: */s/ Lawren A. Zann*
**GREENSPOON MARDER LLP**
Lawren A. Zann, Esq.
*Pro Hac Vice Admission*
200 E. Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Telephone: (954) 333-4345
Facsimile: (954) 848-3974
E-mail: lawren.zann@gmlaw.com

-and-

**TAFT STETTINIUS & HOLLISTER LLP**

55232476.1

2

                Mark G. Cooper, Esq.
                Michigan Bar No. P52657
                27777 Franklin Rd, Suite 2500
                Southfield, Michigan 48034
                Telephone: (248) 727-1462
                Facsimile (248) 351-3082
                E-mail: mcooper@taftlaw.com

                *Attorneys for Credit Pros International, LLC*

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL DISMISSAL OF FAC

## ISSUE PRESENTED:

Whether the FAC pleads its allegations of fraud with particularity as required by Fed. R. Civ. P. 9(b).

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

Fed. R. Civ. P. 9(b)

*Slack v. Fair Isaac Corp.*, 390 F. Supp. 2d 906 (N.D. Cal. 2005)

*Browning v. Yahoo! Inc.!, No. C04-01463HRL, 2004 WL 2496183* (N.D. Cal. Nov. 4, 2004)

55232476.1

## I. INTRODUCTION

Plaintiff continues to seek to assert claims against Credit Pros that sound in fraud under the Credit Repair Organization Act, 15 U.S.C. § 1679 *et seq.* ("CROA") and the Michigan Credit Services Protection Act, M.C.L. § 455.1821 *et seq.* ("MCSPA"). But to do so, as set forth in the Federal Rules of Civil Procedure, Plaintiff must allege such claims with particularity to safeguard Credit Pros' reputation from improvident charges of wrongdoing. Simply put, Plaintiff continues to fail to allege his fraud-based claims with particularity. Accordingly, Credit Pros respectfully requests that the Court enter an order dismissing the fraud-based claims attempted to be asserted in Plaintiff's First Amended Complaint ("FAC"). Because Plaintiff previously attempted to correct his pleading deficiencies but failed to do so in any substantive way, Plaintiff's fraud-based claims should be dismissed with prejudice as he is unable to state such claims particularity.

## II. STATEMENT OF FACTS

Plaintiff filed his FAC against Credit Pros on June 30, 2023—approximately three (3) months after entering into a Retainer and Service Agreement (the "Agreement") with Credit Pros. *See* FAC, ¶ 10. But the FAC does not assert any claim pursuant to the Agreement or breach thereof. Nor does the FAC cite to any provisions, promises, representations, or undertakings set forth in this Agreement in furtherance of Plaintiff's claims. Instead, Plaintiff seeks to assert, *inter alia*, fraud-

55232476.1

based claims pursuant to 15 U.S.C. § 1679b(a)(3)-(4) (Count I(a))[2] and M.C.L. § 445.1823(d)-(e) (Count II).[3] *See* FAC, ¶¶ 24-27 and 39-46. These claims are based on alleged "promise(s)" and "representations" of an unknown Credit Pros representative(s), uttered at an unknown time(s), in an unknown manner(s), and devoid of context. *Id.*, ¶¶ 8, 9, 11, 14, 16, 25, 27, 40, 42, 44, 46. Plaintiff alleges he "detrimentally relied on" these purported general "promise(s)" and representation(s)," which are alleged, in full, as follows:

> 8. …Plaintiff reached out and was connected with Defendant, at which point it was **represented to Plaintiff that Defendant would be able to help him improve his credit history by clearing up delinquent debts**.
>
> 9. Specifically, Defendant spoke with a male representative of Defendant who **promised Plaintiff it would dispute and remove an inaccurate debt Plaintiff has with Xfinity among the other incorrect marks on Plaintiff's credit reports within 90 days**.
>
> 11. In accordance with the terms of the agreement, Plaintiff paid Defendant $190 per month in exchange for **Defendant's promise of reviewing Plaintiff's credit reports, removing negative or misleading accounts and improving his credit scores**, all of which Plaintiff detrimentally relied on.

---

[2] Count I purports to assert additional disparate CROA violations against Credit Pros predicated entirely on technical violations of CROA. *See* Count I(b) (predicated on 15 U.S.C. § 1679b(b)) and Count I(c) (predicated on 15 U.S.C. § 1679c). These additional alleged CROA violations are not at issue in this Motion.

[3] Count II purports to assert additional disparate MCSPA violations against Credit Pros predicated entirely on technical violations of MCSPA. *See* Count II(a), ¶¶ 37-38 (predicated on M.C.L. § 445.1823(b)) and 47-48 (predicated on M.C.L. § 445.1823(f)). These additional alleged MCSPA violations are not at issue in this Motion.

14. In June 2023, dissatisfied with the sums of money paid for deficient credit services and **false promises**, Plaintiff contacted Defendant to cancel his contract with Defendant….

16. Specifically, in March 2023, **Defendant falsely promised Plaintiff that it would resolve a delinquent inaccurate debt Plaintiff had with Xfinity among the other incorrect marks on Plaintiff's credit reports within 90 days**.

25. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. In order to get Plaintiff to agree to utilize Defendant's services, **Defendant represented that its services would remove all negative accounts from Plaintiff's credit reports**, however, Defendant completely failed to follow through on these promises or the services it represented it would perform for Plaintiff.

27. Specifically, in March 2023, Defendant **falsely promised Plaintiff that it would resolve a delinquent inaccurate debt Plaintiff had with Xfinity among the other incorrect marks on Plaintiff's credit reports within 90 days**. However, Defendant failed to uphold its promise to Plaintiff.

40. Defendant violated M.C.L. § 445.1823(d), by **promising Plaintiff that by enrolling his debts into its credit repair program, Plaintiff will see negative accounts, including Plaintiff's Xfinity account, removed from his credit report, thus improving his credit score and overall creditworthiness**.

42. Specifically, in March 2023, Defendant **falsely promised Plaintiff that it would resolve a delinquent inaccurate debt Plaintiff had with Xfinity among the other incorrect marks on Plaintiff's credit reports within 90 days**. However, Defendant failed to uphold its promise to Plaintiff.

44. Defendant violated M.C.L. § 445.1823(e) through its deceptive acts and practices of **promising Plaintiff that it would improve his credit score and remove his student his negative marks** *[sic]* **on his consumer credit reports**. The deception of promising it

> [sic] clients something it knows it cannot fulfill goes against the MCSPA.
>
> 46. Specifically, in March 2023, Defendant **falsely promised Plaintiff that it would resolve a delinquent inaccurate debt Plaintiff had with Xfinity among the other incorrect marks on Plaintiff's credit reports within 90 days**. However, Defendant failed to uphold its promise to Plaintiff and it did not remove any of Plaintiff's delinquent inaccurate accounts, including the promised Xfinity account.

FAC, ¶¶ 8, 9, 11, 14, 16, 25, 27, 40, 42, 44, and 46 (emphasis added). There are no pertinent allegations elaborating or otherwise providing specificity to those reflected above.

## III. LEGAL STANDARDS

Fed. R. Civ. P. 12(b)(6) permits a defendant "to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Brege v. Lakes Shipping Co., Inc.*, 225 F.R.D. 546, 548 (E.D. Mich, 2004) (quoting *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993)). In deciding such a motion, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Id.* (quoting *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996)). "[W]hile liberal, this standard of review does require more than the bare assertion of legal conclusions." *Id.* (quoting *In re Delorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

55232476.1

Fed. R. Civ. P. 9(b) provides, in pertinent part, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id.* This is so because the "purpose of Rule 9(b) is to provide fair notice to the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud." *Id.* at 549. To satisfy Rule 9(b)'s particularity requirement, a party must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Ind. State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 585 F.3d 935, 942-43 (quoting *Frank v. Dana*, 547 F.3d 564, 570 (6th Cir. 2008)); *see also Brege*, 225 F.R.D. at 549 (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)) (Rule 9(b) requires a party to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme, the fraudulent intend of the [other party], and the injury resulting from the fraud"). These principles equally apply where an allegation in a pleading contains an "averment of fraud," whether as part of "a fraud claim of an elements of a non-fraud claim." *Brege*, 225 F.R.D. at 549; *see also Ind. State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund*, 583 F.3d at 942 ("the pleading strictures of Federal Rule of Civil Procedure 9(b) apply" to "claims sound[ing] in fraud").

## IV. ARGUMENT

Plaintiff's fraud-based claims are predicated on 15 U.S.C. § 1679b(a)(3)-(4) and M.C.L. § 445.1823(d)-(e), which state, respectively:

> No person may make or use any untrue or misleading representation of the services of the credit repair organization. (15 U.S.C. § 1679b(a)(3)).
>
> No person may engage, directly or indirectly, in any act, practice or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization. (15 U.S.C. § 1679b(a)(4)).
>
> A credit services organization, a salesperson, agent, or representative of a credit services organization, or an independent contractor who sells or attempts to sell the services of a credit services organization shall not make or use a false or misleading representation in the offer or sale of the services of a credit services organization. (M.C.L. § 445.1823(d)).
>
> A credit services organization, a salesperson, agent, or representative of a credit services organization, or an independent contractor who sells or attempts to sell the services of a credit services organization shall not engage, directly or indirectly, in a fraudulent or deceptive act, practice, or course of business in connection with the offer or sale of the services of a credit services organization…. (M.C.L. § 445.1823(e)).

"[I]t cannot be seriously disputed that [15 U.S.C. § 1679b(a)(3)] fall[s] within the scope of Rule 9(b)." *Slack v. Fair Isaac Corp.*, 390 F. Supp. 2d 906, 911 (N.D. Cal. 2005); *id.* at 913 ("there can be no serious dispute that the heightened pleading standard of Rule 9(b) applies to plaintiff's claims under section 1679b(a)(4)"); *see also Browning v. Yahoo! Inc.!*, No. C04-01463HRL, 2004 WL 2496183 (N.D. Cal. Nov. 4, 2004); *Sancho v. Davidson*, No. 3:05-CV-883 (RNC), 2006 WL 8448126

55232476.1

(D. Conn. Mar. 3, 2006). This is so where, as here, such fraud-based CROA claims "rely almost exclusively on defendant['s] allegedly 'misleading and deceptive conduct[, which] conduct 'sounds in fraud' even if it would not necessarily give rise to a cause of action for deceit at common law." *Slack*, 390 F. Supp. 2d at 911-12. And because the fraud-based MCSPA claims Plaintiffs seeks to assert against Credit Pros substantially track the language contained in the fraud-based CROA claims Plaintiff seeks to assert against Credit Pros, such fraud-based MSCPA claims must also fall within the scope of Rule 9(b). *See Jackson v. Telegraph Chrysler Jeep, Inc.*, No. 07-10489, 2009 WL 928224, at *4 (E.D. Mich. Mar. 31, 2009) ("In Michigan, a violation of the MCPA[4] is analogous to a common law fraud claim").

The FAC's limited and conclusory allegations reveal Plaintiff seeks to rely upon supposed "misrepresentations and deception as to the nature of the credit repair services [Credit Pros] could provide Plaintiff" as well as Credit Pros' purported "represent[ation] that its services would remove **all negative accounts** from Plaintiff's credit reports" in asserting his fraud-based CROA and MCSPA claims. FAC, ¶ 25 (emphasis added). However, Plaintiff immediately contradicts such allegation by asserting "Defendant falsely promised Plaintiff that it would resolve **a delinquent inaccurate debt** that Plaintiff had with Xfinity among the **other**

---

[4] Claims asserted pursuant to Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 445.901 *et seq.*, include those predicated upon "unfair, unconscionable, or deceptive methods acts, or practices in the conduct of trade or commerce." M.C.L. § 445.903.

**inaccurate marks** on Plaintiff's credit reports within 90 days." *Id.,* ¶ 27 (emphasis added). The FAC does not provide any specificity as to the nature of the alleged representations concerning such "other inaccurate marks," including whether such phrase is somehow synonymous with "all negative accounts." *See, generally,* FAC; *see also id.*, ¶¶ 8 ("represented to Plaintiff that Defendant would be able to help him improve his credit history by clearing up **delinquent debts")**, 11 ("promise of reviewing Plaintiff's credit reports, removing **negative or misleading accounts** and improving his credit scores"), 44 ("promising Plaintiff that it would improve his credit score and remove **his student his negative marks**"). (Emphasis added)

Of course, had Plaintiff actually adhered to the applicable heightened pleading standard concerning his fraud-based claims, neither Credit Pros nor this Court would be left speculating as to the supposed "circumstances constituting fraud" Plaintiff again attempts to allege in his FAC. Indeed, the FAC fails to allege, *inter alia*:

- the identity of the speaker, including said speaker's relationship to Credit Pros, *see* FAC, ¶¶ 8 ("Plaintiff…was connected with Defendant, at which point it was represented to Plaintiff…."), 9 ("Defendant spoke with a male representative of Defendant…."), 11 ("Defendant's promise of reviewing Plaintiff's credit reports…."), 16 ("Defendant falsely promised…."), 25 ("Defendant violated…CROA through its misrepresentations and deception….Defendant represented…."), 26 ("Defendant… suggested to Plaintiff…."), 27 ("Defendant falsely promised…"), 40 ("Defendant…promis[ed] Plaintiff…."), 41 ("Defendant… suggested to Plaintiff"), 43 ("Defendant falsely promised…."), 44 ("Defendant…promis[ed] Plaintiff…."), 45 ("Defendant… suggested to Plaintiff"), 46 ("Defendant falsely promised….");

55232476.1

13

- where and how such supposed representations, promises, and suggestions were made, *see id.*;

- the complete content and context of such supposed representations, promises, and suggestions, *see id.*; and

- the intent of the unknown speaker(s) when making such supposed representations, promises, and suggestions, *see id.*

Even more troubling, Plaintiff does not allege with any specificity how the foregoing supposed representations, promises, and suggestions were false. Rather, Plaintiff simply concludes such falsity. *See* FAC, ¶¶ 16 ("falsely promised"), 27 ("falsely promised"), 42 ("falsely promised"), 46 ("falsely promised") *see also id.*, ¶¶ 26 ("acted deceptively"), 41 ("acted deceptively"), 45 ("acted deceptively"). This hardly suffices to meet Plaintiff's heightened pleading standards to allege his fraud-based claims with specificity "to safeguard [Credit Pros'] reputation from improvident charges of wrongdoing, and to protect [Credit Pros] against the institution of a strike suit." *Sancho*, 2006 WL 8448126, at *1 (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991).

At its crux, the FAC continues to simply allege someone(s) made some representation(s) at some time(s) from some location(s) in some medium(s) that Credit Pros could somehow "remove all negative accounts from Plaintiff's credit reports," FAC, ¶ 25. Or was it a promise to address "delinquent inaccurate debt…among other inaccurate marks?" *Id.*, ¶ 27. Perhaps it was just a statement concerning "delinquent debts?" *Id.*, ¶ 8. Or maybe it was only a suggestion regarding

"negative or misleading accounts?" *Id.*, ¶ 11. Then again, it could have simply been about "his student his negative marks?" *Id.*, ¶ 44. Regardless, it is clear that the FAC does not and cannot meet Rule 9(b)'s heightened pleading standard. Not even close. As a result, Plaintiff's fraud-based CROA and MCSPA claims should be dismissed, and this time with prejudice.

## V. CONCLUSION

Plaintiff's fraud-based CROA and MCSPA claims dutifully recite the respective statutory language at issue, but noticeably fail to allege any circumstances of fraud with particularity as required by Rule 9(b). As a result, such claims must be dismissed.

Respectfully submitted,

Dated: Nov. 21, 2023

By: */s/ Lawren A. Zann*
**GREENSPOON MARDER LLP**
Lawren A. Zann, Esq.
*Pro Hac Vice Admission*
200 E. Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Telephone: (954) 333-4345
Facsimile: (954) 848-3974
E-mail: lawren.zann@gmlaw.com

-and-

**TAFT STETTINIUS & HOLLISTER LLP**
Mark G. Cooper, Esq.
Michigan Bar No. P52657
27777 Franklin Rd, Suite 2500
Southfield, Michigan 48034

55232476.1

15

>Telephone: (248) 727-1462
>Facsimile (248) 351-3082
>E-mail: mcooper@taftlaw.com
>
>*Attorneys for Credit Pros International, LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of November, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which document will be served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

>*/s/ Lawren A. Zann*
>Lawren A. Zann

55232476.1