UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLEN K. SMITH,

       Plaintiff,

v.

                                          Case No. 23-cv-11582
                                          Honorable Linda V. Parker

CREDIT PROS INTERNATIONAL, LLC.

       Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S PARTIAL MOTION TO DISMISS

Plaintiff Allen K. Smith ("Smith") brings this action against Defendant Credit Pros International, LLC ("Credit Pros") alleging that Credit Pros' promises (1) to improve Smith's credit score; and (2) to rid bad accounts from Smith's credit report within 90 days were never performed despite Smith's monthly payments to Credit Pros. Smith alleges that Credit Pros has violated the Credit Repair Organizations Act ("CROA") and the Michigan Credit Services Protection Act ("MCSPA") by making false and misleading representations to fulfill its services. (ECF No. 14 at PageID. 58-63.) Smith alleges that he has suffered concrete harm because Credit Pros' actions induced emotional disturbances, aggravation, mental anguish, and pecuniary loss stemming from the payments made to Credit Pros. Smith further alleges that his federal and state protected interests against deception,

1

fraud, and misconduct were violated as a result of Credit Pros' misconduct. (*Id.*)

The matter is before the Court on Defendant's Partial Motion to Dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 15.) The motion has been fully briefed. (ECF Nos. 17, 18.)

I.      **Standard of Review**

A Rule 12(b)(6) motion to dismiss assesses the validity of the complaint's assertions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There must be enough factual information "to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard does not require providing every detail, but bare assertions without factual support will not suffice. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 374 (6th Cir. 2011). The court must construe the facts in the light most favorable to the plaintiff. *Laborer's Local 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 403 (6th Cir. 2014).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). There must be enough factual detail to provide the court with enough information to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

However, when fraud is alleged, Federal Rule of Civil Procedure 9(b) guides the pleading standard. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conduct may be alleged generally." Fed. R. Civ. P. 9(b). To meet the particularity requirement of Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (internal quotations and citations omitted).

## II.   Background

At the start of 2023, Smith alleges that he sought out services to help improve his creditworthiness to finance a car for his daughter. (ECF No. 14 at PageID. 56.) Smith, a 60-year-old man, saw an online advertisement for a credit repair company that promised to "improve his credit history within 90 days." (ECF No. 14 at PageID. 56.) With that enticement, Smith connected with a "male representative" of Credit Pros who promised to "dispute and remove an inaccurate debt Plaintiff has with Xfinity among other incorrect marks on Plaintiff's credit reports within 90 days." (ECF No. 14 at PageID. 56.)

Following that discussion, Smith entered into a contract with Credit Pros for those promises alleged about improving his credit score and removing bad

3

accounts within 90 days.  (*Id*.)  The contract required Smith to pay Credit Pros $190 a month in exchange for Credit Pros' "promise of reviewing Plaintiff's credit report, removing negative or misleading accounts and improving his credit scores, all of which [Smith] detrimentally relied on."  (*Id*. at PageID. 57.)

Smith paid Credit Pros monthly, but his credit score persistently decreased.  (*Id*.)  For months, Smith claims that he received no update or information from Credit Pros on its work to meet the contractual terms.  (*Id*.)

In June 2023, Smith called Credit Pros to cancel his contract, but was told by a representative that only a supervisor was allowed to do that.  (ECF No. 14 at PageID. 57.)  The representative informed Smith that a supervisor named Freddie would call Smith back.  (*Id.*)  Smith claims a Credit Pros supervisor never called back.  (*Id*.)

On June 6, 2023, Smith contacted Credit Pros again and successfully canceled the contract.  (*Id*. at PageID. 58.)  By the end of the contract's duration, Smith had paid $760 to Credit Pros, but received no promised services in return.  (*Id*.)

In his First Amended Complaint, Smith alleges that Credit Pros violated three sections of the CROA.  First, Smith alleges Credit Pros violated 15 U.S.C. § 1679b(a)(3-4) by misrepresenting Credit Pros' services and ability to alleviate Smith's bad accounts.  (*Id*. at PageID. 59.)  Further, Smith alleges that Credit Pros

4

never followed through on its promises and deceived Smith as to how his monthly payments were utilized by Credit Pros. (*Id.*) Second, Smith alleges that Credit Pros violated 15 U.S.C. § 1679b(b), by charging Smith in advance before service was completed. (ECF No. 14 at PageID. 59-60.) Third, Smith alleges that Credit Pros violated 15 U.S.C. § 1679c by failing to provide him with the relevant disclosures that credit repair organizations must supply to consumers before they execute a contract. (ECF No. 14 at PageID. 60.)

Additionally, Smith alleges that Credit Pros violated four subsections of the MCSPA. First, Smith alleges Credit Pros violated § 45.1823(b) by charging him before completing the promised services and not reimbursing Smith for incomplete work. (ECF No. 14 at PageID. 61.) Second, Smith alleges Credit Pros violated § 445.1823(d) by making false and misleading representations of its services to entice Smith to enter into the contract. (*Id*. at PageID. 61.) More specifically, this pertains to Credit Pros' promise to get the bad Xfinity account removed, and its representations that it would use Smith's payments to remove the negative accounts and debt within 90 days. (*Id*. at PageID. 61-62.) Third, Smith alleges Credit Pros violated § 445.1823(e) by using a deceptive promise – to improve Smith's credit score and to rid the negative accounts in exchange for monthly payments – while knowing that Credit Pros could not fulfill the promised services. (*Id*. at PageID. 62.) Fourth, Smith alleges Credit Pros violated § 445.1823(f) when

5

Credit Pros did not complete its promised services within 90 days of the contract. (*Id*. at PageID. 62.)

Smith filed this suit on June 30, 2023, asserting the claims described above. Credit Pros now asks this Court to dismiss some of Smith's claims. Credit Pros argues that Smith has failed to satisfy the heightened pleading burden in Rule 9(b) for the elements of his claims under § 1679b(a)(3-4) of the CROA and § 445.1823(d-e) of the MCSPA. (ECF No. 15 at PageID. 70.) Smith's claims under §§ 1679b(b) and 1679c of the CROA and § 445.1823(f) of the MCSPA are not at issue in Credit Pros' Motion. (*Id*. at PageID. 70.)

**III. Applicable Law & Analysis**

    **A. Pleading Standards Under the Relevant CROA and MCSPA Provisions**

The parties are divided on what pleading standard governs the claims at issue in Credit Pros' motion. Smith asks this Court to separate subsections of the statutes into two groups: one governed by the standards of Rule 8 requiring a short and plain statement and the other governed by the heightened standards for fraud requiring more detail and information under Rule 9(b). Smith contends that fraud is not an essential component in the statutory language of § 1679b(a)(3-4) of the CROA or § 445.1823(d-e) of the MCSPA. (ECF No.17 at PageID. 89.) Relying on *Helms v. Consumerinfo.com*, 436 F. Supp.2d 1220 (N.D. Ala 2005), Smith asserts that § 1679b(a)(3) of the CROA should be reviewed under Rule 8's

6

pleading standard because the *Helms* court found that this subsection does not require any showing of fraud. *Id.* at 1237.  But Smith concedes that § 1679b(a)(4) of the CROA may fall under the pleading requirements of Rule 9(b).  (ECF No. 17 at PageID. 90.)

Although Smith asks this Court to use two different pleading standards, Smith contends that his claims satisfy both Rule 8 and Rule 9(b).  Smith claims that the First Amended Complaint ("FAC") provides the relevant "who, what, how, why, when and where surrounding Credit Pros' alleged decept[ion]" to put Credit Pros on notice to respond sufficiently under Rule 9(b).  (ECF No. 17 at PageID. 85.)

Credit Pros asks this Court to examine each of Smith's relevant claims under Rule 9(b) because of the totality of fraud and deception allegations.  (ECF No. 15 at PageID. 69.)  Moreover, Credit Pros maintains that the claims pertaining to the relevant subsections of the CROA and MCSPA should be dismissed because Smith fails to plead the claims with particularity as required under Rule 9(b).  (ECF No. 15 at PageID. 69.)

Examining the statutory language of each relevant subsection under the CROA and MCSPA, the Court finds that fraud, deceit, and misrepresentation are at the center of each provision and corresponding claim.  The pertinent sections of the CROA discuss making "untrue or misleading representation of the [credit repair

7

organization's] services" and acting directly or indirectly in practices that consist or result in "fraud or deception on any person in connection with the offer or sale of services of the credit repair organization." 15 U.S.C. § 1679b(a)(3-4). These subsections intend to protect buyers and to address the fraudulent and deceitful practices and actions of credit repair organizations. Claims under § 1679b(a) must be pled under Rule 9(b). *See Bilbao v. Pac. Insolvency All., LLC*, No. 21-cv-07736, 2022 WL 2160415 (C.D. Cal. 2022).

The relevant sections of the MCSPA address making "false or misleading representation in the offer or sale of [credit repair] services" and "engag[ing], directly or indirectly, in a fraudulent or deceptive act" that guarantees that the repair service can "delete an adverse credit history" without proper disclosures about the limitations of its services. Mich. Comp. Laws § 445.1823(d-e). Similar to the CROA, these sections address the fraudulent practices and misrepresentations that credit repair organizations utilize to lure in consumers. Both statutes intend to protect consumers and punish credit repair companies who know that their deceit and fraudulent behavior will likely trick consumers into financial obligations through contracts.

Whether Smith's claims are rooted in mostly fraud or misrepresentation is irrelevant for discussions of pleading, since the Sixth Circuit holds that both fraud and misrepresentation are subject to Rule 9(b)'s pleading standard. *William*

8

*Beaumont Hosp. Sys. v. Morgan Stanley*, 677 F. App'x. 979, 982-83 (6th Cir. 2017); *see also Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 752 (6th Cir. 2012). The Court finds that misrepresentation and fraudulent behavior are at the core of the relevant statutory provisions, and thus they must be analyzed under Rule 9(b)'s pleading standards.

### B. Smith Meets the Heightened Burden of Rule (b)

According to Rule 9(b), the plaintiff "must state with *particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). The particularity component requires a pleading of the "who, what, when, where, and how" for the alleged fraudulent actions and misrepresentations. *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006). The Sixth Circuit interprets Rule 9(b) as requiring the claimant to (1) describe specific statements made by the speaker; (2) identify the speaker; (3) specify when and where the statements were made; and (4) explain why the statements were fraudulent. *Frank*, 547 F.3d at 569-70. These details adequately place the defendant on sufficient notice to answer the claim of fraud. When the complaint fails to meet this burden, dismissal is justified under Rule 12(b)(6). This Court finds, however, that Smith has adequately pleaded the particulars required under 9(b).

9

First, the FAC illustrates how Credit Pros' persistent assurances to resolve Smith's bad account with Xfinity and to improve Smith's credit score all within 90 days of signing the contract induced Smith to sign with Credit Pros. (ECF No. 14 at PageID. 56-57.)

Second, Smith identifies the speaker who made those assertions to induce Smith into the contract. Credit Pros claims Smith insufficiently identifies the speaker. The Court finds that Smith provides enough detail for identification. He names Credit Pros as the credit repair company that made the misrepresentations, and he specifies that he spoke to a male representative who made the asserted promises and a supervisor who eventually canceled his contract. (ECF No. 14 at PageID. 57-58.) Under the circumstances, he cannot be expected to do more. The identity of these individuals is exclusively within Credit Pros' control.

Third, Smith identifies when and where the purported misleading statements were made. Smith alleges that he spoke with the Credit Pros representative who made the misrepresentations triggering the signing of the contract in March 2023. (ECF No. 14 at PageID. 57.) This stemmed from Credit Pros' initial online advertisement promising to "help him improve [his] credit history by clearing up delinquent debts." (*Id*.) The most significant portions of communication took place over the phone when Smith called (1) to inquire about Credit Pros' 90-day services to clean up the accounts and to improve his credit score; (2) to set up a

contract with Credit Pros for the inquired services; and (3) to cancel his contract with Credit Pros on two different occasions. (ECF No. 14 at PageID. 56-57.) The entire relationship spanned from March to June 6, 2023.

Fourth, Smith explains why Credit Pros' statements were fraudulent and misleading. Smith refers to the fraudulent statements that Credit Pros made promising to "dispute and remove an inaccurate debt Plaintiff has with Xfinity among other incorrect marks" within 90 days of signing the contract. (ECF No. 14 at PageID. 56-57.) He further refers to Credit Pros' representations concerning its ability to clean up Smith's credit, which induced Smith to sign the contract. It took a few conversations and calls to entice Smith to sign on and start his payments to Credit Pros. (ECF No. 14 at PageID. 57.) There is "sufficient factual matter" in Smith's FAC to show that Credit Pros' false assurances induced Smith to enter into the agreement with Credit Pros and to provide the monthly amount even before any work commenced. *Twombly*, 550 U.S. at 570.

The FAC places Credit Pros on notice of the false misrepresentations that form the basis for Smith's claims. Additionally, the FAC contains more than empty claims of fraudulent misrepresentation. *See Rautu v. U.S. Bank*, 557 F. App'x 411, 414 (6th Cir. 2014) (finding that the complaint did not meet the Rule 9(b) standard because it "does not state the content of the misrepresentations–any specific statement made by any individual or on any form that is false or

11

misleading"). Smith adequately details the events that led to the filing of this suit. The signing of the 90-day clean-up contract under Credit Pros' false pretenses produced the harm suffered: the exploitation of about $800 for no benefit in return, the continuance of a bad Xfinity account, and a lower credit score than before he trusted Credit Pros to improve his credit.

The FAC satisfies both plausibility pleading standards under Rule 8 and the particularity pleading standards under Rule 9(b). Smith pleads the facts necessary to put Credit Pros on adequate notice to respond to his claims.

### IV. Conclusion

For the reasons stated, the Court concludes that Smith's First Amended Complaint is not subject to partial dismissal pursuant to Rule 12(b)(6).

Accordingly,

**IT IS ORDERED** that Defendant's Partial Motion to Dismiss (ECF No. 15) is **DENIED**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: July 9, 2024